UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,         Case No. 00-6119-CR-ZLOCH

          Plaintiff,

v.                                **NOTICE OF OBJECTIONS**
                                  **TO PRESENTENCE**
WILLIAM MOCCIA                    **INVESTIGATION REPORT**
,
          Defendant.
_____/

COMES NOW, the Defendant, WILLIAM MOCCIA, by and through his undersigned counsel and respectfully notices this Honorable Court pursuant to Rule 32, Fed.R.Crim.Proc., Rule 88.8, SD Fla. L.R., and USSG §6A1.3 of his formal objections to portions of the PSR with respect to the following sections, pages, paragraphs and states:

**A.    "Offense Level Computation," "Role Adjustment" and related findings. PSR, pp. 15-16, ¶¶49-56-57, p. 27, ¶102.**

The Defendant respectfully invites this Honorable Court to consider that he merits a two-level role adjustment based upon the facts as described in the PSR.

"The proponent of the downward adjustment--here the defendant--always bears the burden of proving a mitigating role in the offense by a preponderance of

the evidence." *United States v. Rodriguez De Varon*, 175 F.3d 930, 939 (11th Cir. 1999).

First, it appears without dispute that co-defendant Greg Pillock served as the organizer of the conspiracy. The enclosed outline on "how to smuggle" was prepared by Pillock and is appended as Exhibit A. This outline was provided to counsel in response to the Standing Discovery Order. Those notes describe Pillock's role as organizer, note taker and compartmentalizer of the smuggling scheme. Pillock apparently made the arrangements to charter the airplane piloted by co-defendant London. Pillock actually purchased consumer goods, stored them in his warehouse, and made arrangements for those goods to be delivered to the airport in Fort Lauderdale so that Moccia, along with Pillock and Pillock's employee, Willie LNU could load the plane used in the smuggling venture in what would appear to be a legitimate commercial venture.

Pillock apparently was able to acquire the financial backing of a Jamaican financier and also obtained the services of a Jamaican based customs house that received the consumer goods through the use of the chartered plane. While the United States side, in Ft. Lauderdale, Moccia helped load these consumer goods in Pillock's van and placed them in the airplane for the flight to Jamaica.

Pillock had a long-standing relationship with Larry London, the pilot. London recruited Moccia to serve as his "kicker" or "unloader." While the PSR

goes to a very lengthy description of every individual's role in the offense conduct, as to William Moccia, the Report reads, "After London made contact with the boat, the occupants of the boat flashed a Q-beam at the airplane. Four bails of marijuana were then ejected from the aircraft. Pillock said, "Billy", later identified as William T. Moccia, was in the plane with London, and Billy kicked the marijuana load out of the plane." Report, p.7, ¶18.

Pillock apparently was able to make arrangements to acquire the marijuana in Jamaica at some "jungle" landing strip. Pillcok was apparently able to convey to London the coordinates and how to find this Jamaican "jungle" landing strip. London, the pilot, made the necessary arrangements for the flight from Florida to Jamaica and back, including all that was required for permission to fly over Cuba, and to figure out where the marijuana should be retrieved, and where the marijuana should be "kicked." (Although Moccia does have a pilot's license, he is not qualified to fly the type of plane used in this venture. Nor did Moccia use any part of that skill to further this venture). Moccia needed two additional guideline points that make punishment more severe just because a chartered plane was used. See PSR, p.15, ¶47, applying USSG §2D1.1 (b) (2) (A).

Pillock told Moccia about the specific method Moccia should employ to both load and unload the marijuana. Pillock meticulously created a conveyer belt-type system which was installed within the plane, complete with rubber

undermatting. Moccia was instructed by Pillock in the simple manner in which he should use Pillock's conveyer system. That system was laid out with numbers and placement which required Moccia to follow step by step directions similar to the ones enclosed in his "how to smuggle" letter, also prepared by Pillock.

Pillock (or others unknown to this Defendant) made arrangements for a "pick up" vessel to await receipt of the "kicked" bales of marijuana. Along with the vessel, Pillock or others obtained a captain and crew member to pick up the "kicked" marijuana. Nearly anyone could have carried out the Moccia kicker or unloader function, assuming they were strong enough to move a heavy bale.

The guidelines provide in pertinent part,
### §3B1.2. Mitigating Role
Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by **4** levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by **2** levels.

In cases falling between (a) and (b), decrease by **3** levels.

Commentary

Application Notes:

*2. ..... It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.*

*3. For purposes of §3B1.2(b), a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal.*

...

<u>Background:</u> *This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant. The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case.*

Moccia did not know those individuals Pillock placed in the boat below to retrieve the marijuana. Moccia was not going to participate in selling the marijuana. Moccia never saw the marijuana once it was taken to the United States. He was not in control of the marijuana. He was not in control of the money. In fact, London or Pillock could simply have decided not to pay him and Moccia was in no position to acquire payment. This is also symptomatic of a lesser role in the conspiracy. Case law has pretty much made the district court the forum of last resort on determination of the role issue. *United States v. Rodriguez De Varon*, 175 F.3d at 947 ("First, and most importantly, the district court must measure the defendant's role against the relevant conduct for which she was held accountable at

sentencing; we recognize that in many cases this method of analysis will be dispositive. Second, the district court may also measure the defendant's role against the other participants, to the extent that they are discernable, in that relevant conduct.") Therefore, as a "kicker" or loader, Moccia respectfully seeks a role adjustment "in the case of a jointly undertaken criminal activity."

Consistent with Moccia's Rule 11 confession, upon landing on the Jamaican "jungle" airstrip, natives brought four extraordinarily large bundles to the plane. Moccia received those bundles and strapped them in the plane, as instructed. Moccia also wrapped the bundles in plastic, as he was instructed to do by Larry London. Moccia worked hard wrapping those bundles during the flight and just finished the job shortly before London instructed him that it was now time to kick them out of the plane into the Atlantic Ocean, some seven or eight miles off the Fort Lauderdale shore.

Under these facts, the defendant respectfully invites this Honorable Court to consider that the defendant has met his burden of proving a mitigating role.

Respectfully submitted,

By: _____
Neil M. Schuster
407 Lincoln Road, Suite 11B
Miami Beach, FL 33139
(305) 673-3737
Fax: (305) 534-5470
Florida Bar No. 216909
Trial Counsel

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished this __14__ day of September, 2000 to the following individuals:

Bertha R. Mitrani, AUSA
Office of the U.S. Attorney,
500 E. Broward Blvd., 7th Floor
Ft. Lauderdale, FL 33394-3002.

Kathryn Gomez, USPO
299 E. Broward Blvd. Rm 409
Ft. Lauderdale, FL 33301
954-769-5505

By: _____
Neil M. Schuster

# EXHIBIT A

Communication:
- Arrival times
- Radio channels memorized
- Monitor channels
- Cell phones
- Battery life times - spare batteries
- test equipment frequently
- GPS locations - spare batteries
- minimum 300,000 candle power spotlights
- Passwords
- Work Gloves

Receiver:
- must be present to accept goods
- must call Crew "J" when en route

Crew J: clear all phone numbers sell phones & beepers
- stay at safe distance untill receiver calls
- monitor local channel
- switch to secret channel
- have lighting systems ready
- have security & move in position
- have rovers with communications
- call Crew "F" when en route & wait

Crew F: keep all #'s cleared (phones & pagers)
- monitor local channel, Set up at approiate times not early
- switch to our secret channel, lighting system - 2 points
- Rovers with communications
- Vehicle & parking & time delays
- Gear clothing sprays poles
- Call Crew "J" A.S.A.P. 2 hr max. All OK!

50

Notes:

Use discretion:
    Vehicle parking. backing in hides tag #
    Keep vehicles at distances untill necessa
    Use bycycles when possible or wall

Clothing Gear:
    Wear clothes change under work cloth
    white jogging set under dark clothes &
    No wallets or ID or phone #'s anywhere
    Shred all notes, #'s, clear pagers prior t
    Do not carry any info on you.
    Get rid of all phone cards (hide 'e
    "Clean your house" and car prior to
    Erase all #'s upon receiving on work d
    Take money and change for pay phones

Other:
    No public contact between truck driver
    with crew members "J or E." nor
    their support vehicles.
(Alibi) Crew members may decide to rent
    hotel room near their working area
    Minumal introductions when necessary

Also: Weather. charts. safty gear. work gloves
    Batteries
    rope. tape. skid. sprays. erase GPS #'s. pen light
    strapping tape. clear all pager #'s, phone #'s,
    radio frequencys, GPS waypoints. Use rental
    cars vs. personal on work days. Must use
    public phones as work days draws nearer,
    and always for important details or in person.

51

Also:
- (A) Never say name of truck driver or his company over private phone or cell phone.
- (B) Date and times of work days must never be discussed over private or cell phones.
- (C) Don't call crew members by name over phones.
- (D) Be discrete as possible involving every move you make
- (E) We only work with friends we know and trust while keeping our distance safe.

Truck Driver:
- Cargo paperwork
- Cargo receipts
- skid · strapping tape · work gloves
- GPS · pratice · "thread the needle"
  - locate · find · hit · delete # waypoints
- Radio channels memorized
- Pratice · evenings
- Call receiver prior to leaving base
- Fuel money
- Stay close to truck overnight
- Must get phone card to arrange details
- Call Crew A on Channel A "en Route" ASAP
- Call Crew B on Channel A "en Route"
- Have all road maps needed
- Have tool kit
- Safety equipment
- Check weather conditions
- Alternate Routes

## Radio Contact

- Use our secret channel to transmitt
- Do not transmitt on any other channels
- You may use Radio to monitor other chanins
- Don't spook our man away
- You can receive transmissions up to 50 mile
- You can only transmitt up to 10 miles
- Channel must be a 5 digit number.
- Don't transmitt unless necessary.
- If the spot is hot send our man elsewhe
- Talk to him on our secret channel.
- If he won't talk back he is probably too far away.
- Is there a back up plan very close?
- Can he go there? How safe will it be
- Save the goods at all costs.
- We can always return in a week or two.
- How soon can you get to back-up.